2022 IL App (2d) 190950-U
No. 2-19-0950
Order filed March 8, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Boone County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-CF-216 |
| | ) | |
| JOSEPH G. THOMPSON, | ) | Honorable |
| | ) | C. Robert Tobin III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's 72-year aggregate sentence violated section 5-8-4(f)(2) of the Unified Code of Corrections (730 ILCS 5/5-8-4(f)(2) (West 2016)) because his acts constituted a single course of conduct that were subject to a maximum 60-year aggregate sentence. A 60-year sentence was not excessive. Therefore, we affirm as modified.

¶ 2    Following a jury trial, defendant, Joseph G. Thompson, was convicted of 12 counts of unlawfully disseminating child pornography (720 ILCS 5/11-20.1(a)(2) (West 2016)) and sentenced to 6 years for each count, for a total of 72 years' imprisonment. On appeal, defendant argues that his aggregate sentence violates section 5-8-4(f)(2) of the Unified Code of Corrections

(730 ILCS 5/5-8-4(f)(2) (West 2016)), and that his sentence should be reduced to the mandatory minimum of 48 years because the sentence is otherwise disproportionate to the harm that he caused and fails to consider his rehabilitative potential. We agree with defendant's first argument and affirm as modified.

¶ 3                                       I. BACKGROUND

¶ 4     On September 5, 2019, defendant was charged by amended indictment with 12 counts of unlawfully disseminating child pornography (720 ILCS 5/11-20.1(a)(2) (West 2016)), a class 1 felony. The charges alleged that on February 15, 2017, defendant disseminated photographs each depicting a female child under the age of 18 in the lewd exhibition of the child's partially developed breasts. Some of the charges also alleged a lewd exhibition of the child's unclothed pubic area. The photographs alleged were labeled z15.jpg (count 1), z16.jpg (count 2), z17.jpg (count 3), z18.jpg (count 4), z114.jpg (count 5), z108.jpg (count 6), z107.jpg (count 7), z98.jpg (count 8), z97.jpg (count 9), z96.jpg (count 10), z95.jpg (count 11), and z91.jpg (count 12).

¶ 5                                          B. Trial

¶ 6     We summarize the evidence presented at trial. Detective David Bird of the Belvidere Police Department was assigned as an investigator for the Illinois Internet Crimes Against Children Task Force (ICAC). On April 7, 2017, he became involved in an investigation in which the National Center for Missing and Exploited Children had sent the ICAC two cyber tips generated by the email provider AOL regarding a user who had disseminated child pornography. Through the use of search warrants and an investigation, Detective Bird determined that a user with the email address bigerstick@aol.com and a particular "IP address" had sent photographs online through AOL's email service. Detective Bird learned the account information for the email address, which included defendant's name, address, and phone number. Detective Bird also obtained all of the

messages in the sent and received email folders in defendant's account, including photo attachments. He identified the photos in court.

¶ 7　Detective Bird obtained a search warrant for defendant's address and executed it on July 20, 2017. Defendant answered the door, and while officers were searching, defendant asked if the warrant was for child pornography. Detective Bird advised him that it was. A personal computer was collected as evidence. Defendant was transported to the police station, and during the interview, he admitted that he used the email address bigerstick@aol.com. Detective Bird showed him copies of the photographs that were attached to email messages, and defendant said that he recognized all of them, and that he had gotten them off of the Internet and saved them. He obtained the pictures from a nudist website and did not know the individuals photographed. Detective Bird asked if he recalled having an email conversation through Craigslist, and defendant said that he recalled the conversation but could not recall if he had sent all of the photos. He said that it was possible that he had, but he did not remember because it was a long time ago. Detective Bird asked why he sent the photos, and defendant said that he would talk to people, and if they indicated that they liked certain things, he would send them those items. Defendant said that he thought that if the photos were on the Internet, they were legal for him to have, and that Detective Bird might think that he was an idiot for believing that.

¶ 8　According to exhibits in evidence, on February 15, 2017, defendant posted an advertisement in Craigslist titled "quick fun with anyone," seeking to share a sexual experience. At 10:51 a.m. "Jim Zim" responded and said that he was looking for "some fun" and suggested a "safe place" such as a car. Defendant and Zim corresponded about their locations, with defendant saying that he did not have time to travel from Belvidere to Rockford. Zim said that was too bad, and defendant agreed, saying he was "so horned up right now I would even maybe suck to

completion for the first time." Zim asked, "How young," and defendant answered, "teens, girls that is." Zim stated, "Of course lol you," and, at 11:23 a.m., defendant said, "Its [*sic*] what Im [*sic*] getting off to now. Have pics of real chicks. Also watching a movie but the girls in that could be over 18, cant [*sic*] tell." Zim responded, "Sounds awesome send me one of those pics." At 11:28 a.m., defendant sent two pictures, za115.jpg[1] and za114.jpg, showing a girl wearing a sheer shirt. At 11:30 a.m., defendant sent Zim six photos, za107.jpg, za108.jpg, z98.jpg, z97.jpg, z96.jpg, and z95.jpg., depicting girls with their breasts exposed. At 11:31 a.m., Zim asked, "Wow do you have more[?]" At 11:34 a.m., defendant emailed him four photos again showing girls with their breasts exposed, z59.jpg, z80.jpg, z91.jpg, and z92.jpg.[2] Zim said "Wow" at 11:36 a.m., and at 11:38 a.m., defendant replied, "I have others I can send later, need to cum now. More pics of you?" Zim responded at 11:40 a.m., "That's all I have." At 11:45 a.m., defendant emailed Zim a website link and said, "Heres [*sic*] a link to the video Im [*sic*] cumming to. It's the pointy tittied girls at the top left titled young nymphet[.] Not trying to virus you so dont [*sic*] open if you dont [*sic*] feel safe. Just puting [*sic*] it out there for you." At 12:34 p.m., Zim stated, "Cool link." At 12:53 p.m., defendant responded, "Ah, also found XHAMSTER. Never did get off. My teen daughter came home form [*sic*] school early and almost caught me naked jacking to the video." Defendant emailed Zim four photos showing girls exposing their breasts and wearing sheer underwear, z15.jpg, z16.jpg, z17.jpg, and z18jpg.

---

[1] Defendant did not face charges relating to za115.jpg.

[2] Defendant did not face charges relating to za59.jpg, za80.jpg, and z92.jpg.

¶ 9    A pediatrician who was also a child abuse specialist testified regarding what physical features are used to determine a child's approximate age. He opined that the girls in the photographs were all under 18 years old and that some were likely under 13 years old.

¶ 10    A forensic computer examiner testified that he printed out the emails and attachments from the return of the AOL search warrant, and he identified the exhibits in court. Some of the email messages were conversations referring to the age of underage individuals, and some had photo attachments that appeared to be children. The examiner searched the computer seized from defendant's home. It contained two hard drives. He did not find the emails on the hard drives themselves, which was not unusual because email content is usually stored in the cloud. However, he found that the attachments from the emails were also stored on the computer.

¶ 11    Copies of other emails and attachments from bigerstick@aol.com were published to the jury to show defendant's *mens rea*, *i.e.*, that he knew the photographs he was charged with disseminating were of underage children. One email stated:

> "That is so hot. I have two daughters that have friends [who] sleep over a lot. I have seen more young panties, bra, titties and pussy than should be allowed. I try to not show to their friends unless I am 1,000 percent sure the girl would think it's on accident like what you described. Here is a pic of one sleepover a few years ago. She was around 11 or 12 at the time. Sneaking a peek while asleep."

The picture attached showed a hand pulling on the waistband of pajamas or underwear.

¶ 12    An email dated August 14, 2012, stated: "Same girl when she was 12 or 13, the next year. I wish I could have got pics of her hard titties. Only ever got to touch them while she was asleep though." There were two pictures attached, showing an adult male penis making contact with the foot of another individual.

¶ 13    An email dated January 5, 2014, stated, "Yes, I know. Just sending a bunch of everything to ya. I like underage as well, like 10 to 12 and up." Attached was an "up short" picture of a young female showing genitalia. Another email sent the same day stated, "At time 11. Second set I sent, 13. Here's her lips. Sorry so dark." It contained the same attachment. A third email from the same date stated, "I am such a perv. I like to flash too. Don't know how many girls I've flashed." Defendant then described in detail exposing himself to two girls who were about 12 years old at a time he was 25 years old, at a public pool in Elgin. Defendant described how he then stood along a path so that he could encounter the girls when they were leaving, and he masturbated and urinated in front of them.

¶ 14    An email dated October 11, 2016, stated, "Here's some pics. She [was] 12 or 13, me like 45." One attachment showed an adult male penis making contact with someone's foot, and the second attachment showed contact with a toe. Another email from the same date stated, "And two from a year later at 13 or 14 years old. I started getting hard and began to cum a little so had to stop. This is middle of night while she's asleep." The attachment showed an adult male penis making contact with another person's foot.

¶ 15    The forensic computer examiner also found many "child notable" Internet search terms that were typed on the computer between May 2017 and July 2017, specifically "[f]lashing teens, hairless teen videos *** hairy young girls videos, HD young girls, old men, little girl nipple slip, little girl titties, [and] nn preteen girls." He further found, "[n]on nude pre teen pics, non nude pre teens, nonnude teen girls, non nude teens, non nude very young pics, non nude preteen girls, old man young girls videos, old men young girls, oops up skirt young girls videos, preteen girls, tiny young non nudes, tiny young non nudes videos, young bikini videos, young girl titties, young girls in bikinis videos, young little child girl bikini videos, young hairless Latinas, young nn, young nn

girls, young non nude, young non nude pre teens, and young nonnude preteen girls." "NN" meant non nude, but in the examiner's experience, a website that was labeled "non nude" could still have nudity on the site and links to other sites with nudity.

¶ 16    The same day that the search warrant was executed, the search terms "[n]on nude lolitas and non nude teens" were used on the computer. Also on the same day, the following "child notable" websites were viewed: Cute NN Teens, Dolce Nonude Models Forum, Little Lolitas, Nude Preteen, Preteen Bbs, My-Fruits Preteens Forum, Art Modeling Preteen Models Agency Portfolios, Non Nude Pic NN Teen TGP Gallery, Non Nude Preteen Models, Preteen Nonude Model Sites, and Preteen Stop. Some of these websites had disclaimers stating that the models were 18 years old or older. The examiner did not know if the charged photographs came from websites with such disclaimers. In his experience, many disclaimers did not accurately represent the images on the websites.

¶ 17    The defense rested without presenting evidence. The trial court instructed the jury on the charged offenses of unlawful dissemination of child pornography, and at defendant's request, the lesser-included offenses of possession of child pornography. The jury found defendant guilty of all 12 counts of unlawful dissemination of child pornography.

¶ 18                                B. Sentencing

¶ 19    Defendant's sentencing hearing took place on October 30, 2019.  According to defendant's presentence investigative report, he was 55 years old at the time of sentencing. He was married in 1996 and divorced ten years later, and the couple had two daughters who lived with defendant when he was arrested. Both children were adults by the time of sentencing. Defendant reported being close to his mother, sisters, and daughters, and that they were very supportive of him after his arrest.

¶ 20    After graduating from high school in 1982, defendant enlisted in the Marine Corps from 1982 to 1986 and was stationed in Lebanon. He was honorably discharged and then worked as a mail carrier, school bus driver, airport screener supervisor, landscaper, and maintenance technician. At one point he attended community college, but he did not graduate. Defendant owned his home prior to his arrest but thereafter lost it to foreclosure.

¶ 21    Defendant had a conviction of public indecency/lewd exposure and battery in 1987, when he was 22, for which he received a sentence of 12 months' court supervision. He had another conviction of battery the same year for which he was sentenced to one year conditional discharge. In 1996, when he was 32 years old, he was convicted of lewd lascivious behavior/expose genitals. In 2005, at age 40, he was convicted of public indecency and sentenced to one year probation. Also in 2005, he was convicted of possession of a firearm without a valid Firearm Owner's Identification Card.

¶ 22    Detective Bird testified for the State as follows. During defendant's interview, he admitted that it was his penis in the photographs with feet, but said that the feet were from an adult female he had met online, whose name he could not remember. A video of defendant interacting on "Omegle" with a male who appeared to be under 18 was found on the computer, and defendant said that he assumed that the male was over 18 because he was online. There was another video of defendant exposing himself to a girls cross country team running through Rock Cut State Park, and Detective Bird learned that they were from Belvidere North High School. The incident occurred in July 2016, when all of the girls were under 18 years old.

¶ 23    In mitigation, the defense presented by "proffer" that defendant's mother would testify that she loved and supported defendant, and would ask the court for mercy.

¶ 24     The State argued as follows in aggravation. In 1987, defendant exposed himself to several customers at a Jewel grocery store. In a separate incident, defendant grabbed a woman's butt at an Aldi grocery store. In 1996, defendant was staring at two women inside a store. He followed them out, and masturbated next to their car, with his penis exposed.  In 2005, defendant was in a park with his penis and testicles hanging out of his pants. He then ran away into a stranger's house, where he was caught.

¶ 25     The prosecutor further argued that the forensic computer examiner's report contained additional emails from defendant that were not read at trial, including:

> "I have always been curious to see girls get flashed and see how they react if they don't know they are being watched. I love to flash the young ones as well. How young? Mine has [*sic*] to at least have some sort of bumps, boobs on their chest. Any age or type. It just depends on the timing, location, safe escape, et cetera."

Another email stated:

> "I go on a website called *Omegle.com*. It's a video cam site that hooks you up with strangers and once in a while you can find girls that will watch ya or better yet flash you back. Here's a pic of a girl that was just about to strip for me but I think her mom walked into her room so she stopped. I will send pics from the first time. Then another email with her beginning to strip dance."

The prosecutor also read emails that were presented at trial.

¶ 26     The prosecutor stated that defendant's computer contained over 2500 pictures of young children in various stages of undress and/or in sexual or provocative poses. There were photos of defendant exposing his penis at what appeared to be a library, and of him exposing his penis and fondling it or ejaculating in public areas. There were photos that defendant apparently took of

teenage girls in their bathing suits without their knowledge. Defendant recorded interactions on Omegle showing him interacting with children through the website and exposing himself, and asking the children to expose themselves back. There were videos showing defendant with his penis exposed picking up a woman in his car; a video "upskirting a female in a Halloween store"; a video of someone ejaculating on the handle of a vehicle that was parked outside; a video of someone driving through a department store parking lot with his genitals exposed; and a video of "the subject in the store pulling down his pants to expose his buttocks and genitals." There were other videos of females in public settings "at times without their knowledge and at other times attempting to flash."

¶ 27    The prosecutor stated that the sentencing range was 4 to 15 years for each of the 12 counts, and that they were mandatory consecutive sentences. He stated that given defendant's age, any sentence would probably be a life sentence, but that the minimum was not appropriate considering all of the things that defendant had done for many years. The prosecutor recommended six years for each count.

¶ 28    The defense argued that the minimum sentence of 48 years was a harsh sentence and would be "more than enough" given defendant's age; that it was his first felony; and that for a substantial period of time defendant lived a law-abiding life.

¶ 29    The trial court stated:

> "I've considered all the statutory factors in aggravation and mitigation as well as— in particular in mitigation, 1 and 2 I think apply. There's no serious physical harm to another that was contemplated by that—again, this gets into physical—nor did he contemplate such. For the most part, that's about it in mitigation. I didn't see a whole lot else out there that really mitigates the situation.

While criminal history—this might be his first felony. I think the criminal history and all of the evidence submitted both at trial and sentencing, it's pretty clear [defendant] has got a long history of sexually deviant behavior. It's amazing that it's only come to light in a felony mirror [*sic*] this late.

Looking at everything including the nature of the offense, I agree with the State and I think six years on each count consecutive to each other at 50 percent under truth in sentencing is appropriate followed by three years of mandatory supervised release."

¶ 30    Defendant immediately filed a motion to reconsider the sentence, arguing that his crimes were not subject to mandatory consecutive sentencing. The trial court denied the motion, and defendant timely appealed.

¶ 31                                    II. ANALYSIS

¶ 32            A. Whether the Aggregate Sentence Violates Section 5-8-4(f)(2)

¶ 33    Defendant first argues that his 72-year aggregate sentence violates section 5-8-4(f)(2) of the Unified Code of Corrections (730 ILCS 5/5-8-4(f)(2) (West 2016)), which states, in relevant part:

"For sentences imposed under the law in effect on or after February 1, 1978, the aggregate of consecutive sentences for *offenses that were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective* shall not exceed the sum of the maximum terms authorized under Article 4.5 of Chapter V for the 2 most serious felonies involved, *but no such limitation shall apply for offenses that were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective*." *Id.* (Emphases added.)

Defendant cites *People v. Boyle*, 155 Ill. 2d 188, 193 (1993), where the supreme court interpreted a prior version of the statute and stated that the Criminal Code of 1961 defined the term "conduct" as " 'an act or a series of acts, and the accompanying mental state.' " *Id.* (quoting Ill.Rev.Stat.1989, ch. 38, par. 2-4). The phrase "course of conduct" was not defined separately by statute, and the supreme court stated that both terms "could include a range of activity and that it is not necessarily confined to a single incident." *Id.* Defendant also points out that this court has stated that offenses are committed in a single course of conduct during which there is no substantial change in the nature of the criminal objective when the defendant is motivated by an overarching criminal objective. *People v. Daniel*, 311 Ill. App. 3d 276, 286-87 (2000).

¶ 34    Defendant argues that his acts constituted a single course of conduct and that the record shows that his criminal objective did not change during the commission of the offenses. He points out that on February 15, 2017, he disseminated child pornography as attachments to four emails sent at 11:28 a.m., 11:30 a.m., 11:34 a.m., and 12:24 p.m. Defendant also notes that all four emails were sent in less than one hour during an email exchange with a single individual, "Jim Zim." He argues that his overarching criminal objective was to send the emails and attachments to Zim, and thus section 5-8-4(f)(2) applies to his 72-year aggregate sentence.

¶ 35    Defendant points out that his 12 convictions for the unlawful distribution of child pornography to a single person are class 1 felonies (720 ILCS 5/11-20.1(c) (West 2016)); that a class one felony has a sentencing range of 4 to 15 years (730 ILCS 5/5-4.5-30(a) (West 2016)); and that the extended-term sentence for a class 1 felony is between 15 and 30 years (*id.*). The maximum extended-term sentences are used to calculate the maximum aggregate sentence (*People v. Myrieckes*, 315 Ill. App. 3d 478, 482 (2000)), and defendant argues that, therefore, his aggregate consecutive sentences could not exceed the sum of the maximum terms authorized under section

5-4.5-30(a) for two class 1 felonies (see 730 ILCS 5/5-8-4(f)(2) (West 2016)), being 60 years total. Defendant argues that his 72-year sentence therefore violates section 5-8-4(f)(2). Defendant acknowledges that he forfeited this issue by not raising it in the trial court (see *People v. Reed*, 177 Ill. 2d 389, 393 (1997)), but he asks that we review the argument as plain error.

¶ 36   The State responds that the limitation on aggregate terms set forth in section 5-8-4(f)(2) does not apply to defendant because his 12 convictions were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. The State argues that the record establishes that defendant sent the first batch of eight photos during a six-minute period beginning at 11:28 a.m. and ending at 11:34 a.m. The State asserts that during this short period of time, there was no change in the nature of defendant's criminal objective to disseminate child pornography. The State maintains that at 11:36, defendant abruptly manifested a substantial change in his criminal objective when he informed Zim, "I have others I can send later, need to cum now. More pics of you?" The State argues that the gist of defendant's message was to advise Zim that defendant did not intend to send any more photos until "later" because he was now going to attend to his own sexual needs, which was a substantial change in defendant's criminal objective. The State states that nine minutes later, at 11:45 a.m., defendant emailed Zim a link to the video that defendant was "cumming to."

¶ 37   The State contends that at 12:53 p.m., defendant began a new virtual interaction with Zim and emailed him four photos, 1 hour and 8 minutes after defendant sent his last email to Zim. The State argues that defendant explained what had occurred in the intervening period of time when he said, "Never did get off. My teen daughter came home form [*sic*] school early and almost caught me naked jacking to the video." The State asserts that it was only after a significant passage of time, which exceeded an hour, that defendant shifted his focus back to Zim, and that he engaged

in a second course of criminal conduct when he emailed Zim four different photos. The State argues that because the 12 photos were not all sent during a single course of conduct, defendant's aggregate 72-year sentence does not violate section 5-8-4(f)(2).

¶ 38    In his reply brief, defendant asserts that the State's argument is not supported by caselaw and is contrary to the statute's purpose, which was described in *People v. Tucker*, 167 Ill. 2d 431, 436 (1995):

> "The apparent purpose of this type of statute is to limit the total length of consecutive sentences imposed on a defendant, while still fairly punishing the defendant in relation to the severity of the crimes. Such a purpose is reasonable in the context of punishing a defendant for a series of crimes, where the stacking of penalties can result in sentences of extraordinary harshness."[3]

Defendant argues that his aggregate 72-year sentence imposed for four emails with 12 photographs sent during an exchange with a single individual is an unfairly harsh sentence that section 5-8-4(f)(2) was enacted to prohibit.

¶ 39    Defendant additionally argues that the State employs a selective reading of the record to claim that his email sent at 12:53 p.m. was a separate course of conduct because it was sent 1 hour and 8 minutes after defendant's previous email. Defendant asserts that his whole course of conduct was exchanging emails with Zim. He points out that at 11:45 p.m., eleven minutes after the 11:34 p.m. email involving four photos, he sent Zim a video link. Zim's response praising the link came at 12:34 p.m., which was 49 minutes later. Defendant argues that it was only about 20 minutes

---

[3] *Tucker* dealt with a prior version of the statute, but our supreme court has still quoted this portion of its reasoning. See *People v. Pullen*, 192 Ill. 2d 36, 45 (2000).

after that, at 12:53 p.m., that defendant provided Zim with the final four photos and the name of the website that hosted the link. Defendant asserts that he never changed his criminal objective because his emails describing masturbation and the link to the video were not crimes, such that the act of sending the last four photos was not an independently motivated criminal objective but rather was part of his overarching objective to disseminate photographs to Zim.

¶ 40    We note that defendant's argument is couched in terms of plain error. In the sentencing context, the plain error doctrine allows a reviewing court to consider an unpreserved error where either (1) a clear or obvious error occurred and the evidence at the sentencing hearing was closely balanced, or (2) a clear or obvious error occurred and the error was so egregious that the defendant was denied a fair sentencing hearing. *People v. Richards*, 2021 IL App (1st) 5711249, ¶ 11. The first step in a plain error analysis is to determine whether a clear or obvious error occurred. *People v. Jackson*, 2021 IL App (1st) 180672, ¶ 21.

¶ 41    Typically, whether a defendant's actions constitute a single course of conduct or is part of an unrelated course of conduct is a question of fact for the trial court, and a reviewing court will defer to the trial court's determination unless it is against the manifest weight of the evidence. *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 102. A factual finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, and not based on the evidence. *People v. O'Malley*, 2021 IL App (5th) 190127, ¶ 23. The trial court here did not make such a finding for purposes of 5-8-4(f)(2), as defendant did not raise the issue below. However, because the facts underlying the offenses are undisputed on appeal, we address this issue and conclude that a finding that defendant's actions were not part of a single course of conduct would be against the manifest weight of the evidence, such that his aggregate 72-year sentence violates section 5-8-4(f)(2).

¶ 42    The State does not contest that the pictures that defendant sent at 11:28 a.m., 11:30 a.m., and 11:34 a.m. were part of a single course of conduct. Thus, the central dispute is whether defendant's act of pausing to masturbate and sending related emails broke the chain of conduct such that the pictures that he sent at 12:53 p.m. were a separate course of conduct. As stated, the limitations on sentencing under section 5-8-4(f)(2) do not apply "for offenses that were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5-8-4(f)(2) (West 2016). We agree with defendant's argument that his overarching criminal objective of disseminating child pornography to Zim did not change during this time period. The longest gap in communication was between 11:45 a.m. when defendant emailed Zim a link, and Zim's response of "Cool link" 49 minutes later at 12:34 p.m. Defendant responded 19 minutes later at 12:53 p.m., sending the last group of photos. All four emails were sent in less than 1½ hours during an email exchange with a single individual, with no independent criminal objective breaking the course of conduct. Therefore, a finding that defendant's actions were not part of a single course of conduct would be against the manifest weight of the evidence. *Cf. People v. Smith*, 345 Ill. App. 3d 179, 190 (2004) (the defendant's commission of driving under the influence (DUI) and commission of obstruction of justice by presenting a false identification to avoid being prosecuted for the DUI were part of a single course of conduct); *People v. Guzman*, 276 Ill. App. 3d 750, 760 (1995) (separate acts of penetration during a single sexual assault are part of a single course of conduct).

¶ 43    Accordingly, the trial court committed a clear and obvious error in sentencing defendant to 72 years' imprisonment instead of the maximum sentence of 60 years' imprisonment under

section 5-8-4(f)(2).[4] Plain error occurs when the trial court misapplies the law to determine the applicable sentencing range, as it affects the defendant's fundamental right to liberty. *Richards*, 2021 IL App (1st) 192154, ¶ 31. Defendant is therefore entitled to relief under the plain error doctrine, and pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we modify his aggregate sentence to 60 years' imprisonment.

¶ 44                    B. Additional Reduction to Sentence

¶ 45    Defendant next argues that we should further reduce his sentence from 60 years to 48 years' imprisonment, which is the mandatory minimum aggregate sentence, because any longer sentence is disparate to the limited harm caused by his conduct and fails to reflect his rehabilitative potential.

¶ 46    Defendant cites *Osborne v. Ohio*, 495 U.S. 103, 108-09 (1990), where the Supreme Court stated that a State may constitutionally proscribe the possession and viewing of child pornography due to a State's compelling interest in safeguarding the physical and psychological well-being of minors, as using children as the subjects of pornography is harmful to their physiological, emotional, and mental health. The Court stated that it was reasonable for the State to conclude that penalizing people who possess and view child pornography will decrease the production of the product. *Id.* at 109-110. Defendant argues that, however, there are over 5 million unique child pornography images now on the Internet, such that *Osbourne*'s market-based justification for punishment does not support a 60-year sentence for emailing 12 photographs defendant had downloaded from websites and sent to a single individual. Defendant asserts that the *de minimus* effect of his actions does not justify sentencing him to an additional 12 years of imprisonment, and

---

[4] We agree with defendant's analysis that the maximum sentence under section 5-8-4(f)(2) for his crimes is 60 years' imprisonment. See *supra* ¶ 35.

thus a 60-year sentence would be constitutionally disparate to the offense. See Ill. Const. 1970, art. I § 11 ("All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.").

¶ 47    Defendant also cites *People v. Stacey*, 193 Ill. 2d 203, 210 (2000), where the defendant momentarily grabbed the breasts of two fully-clothed girls in separate incidents and was sentenced to consecutive 25-year sentences. Our supreme court stated that the sentences were manifestly disproportionate to the nature of the offenses, contrary to the constitution's requirement that penalties be determined according to the seriousness of the offense. *Id.* at 210-11. Defendant maintains that the same reasoning applies here. Defendant points out that the trial court stated that defendant did not contemplate nor did his conduct cause serious physical harm. He argues that a 60-year sentence is what one might expect for an individual who sexually assaulted a child.

¶ 48    Defendant additionally argues that a 60-year sentence fails to reflect his rehabilitative potential, and that the trial court ignored substantial mitigating evidence. He asserts that his military service, long work history, and education rebut the trial court's finding that the sole mitigating factor was that his conduct did not physically injure another person. Defendant further maintains that the trial court failed to recognize that what it described as "sexually deviant behavior" was likely a manifestation of mental illness, which was another mitigating factor. See 730 ILCS 5/5-5-3.1(a)(16) (one mitigating factor is that the defendant was suffering from a serious mental illness which substantially affected his or her ability to understand the nature of his or her acts or to conform his or her conduct to the law's requirements); *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 65 (a mental illness may be a mitigating factor at sentencing). Defendant cites the criteria for diagnoses of pedophilia and exhibitionism from the Diagnostic and Statistical Manual of Mental Disorders IV-TR (2000) and argues that the evidence that the State presented showed

that he likely suffered from these mental illnesses, and that his alarming conduct is most likely rooted in these illnesses. He asserts that both of these disorders can be treated, which is relevant to his rehabilitative potential.

¶ 49    Last, defendant acknowledges that defense counsel did not raise these arguments in his motion to reconsider the sentence, thus forfeiting them for review. See Ill. S. Ct. R. 605(a)(3)(C) (eff. Oct. 1, 2001). Defendant argues that counsel was ineffective for failing to do so because there was otherwise a reasonable probability that the trial court would have imposed a lesser sentence. Defendant alternatively argues that the plain error doctrine applies.

¶ 50    The State responds that the record establishes that the trial court properly exercised its discretion in sentencing defendant. It argues that defendant faced a sentence of 4 to 15 years for each of his 12 convictions (730 ILCS 5/5-4.5-30(a) (West 2016)), and that the requirement of consecutive sentencing (730 ILCS 5/5-8-4(d)(2.5) (West 2016)) resulted in a range of 48 to 180 years' imprisonment. The State notes that the trial court imposed a 6-year sentence for each conviction, which was near the lower end of the sentencing range, and that defendant's 72-year aggregate sentence was 24 years above the minimum and 108 years below the maximum.

¶ 51    The State asserts that, contrary to defendant's argument, the fact that child pornography is so widespread on the Internet underscores the very reason why the legislature deemed the unlawful dissemination of child pornography to be a serious offense warranting class 1 sentencing. The State further argues that the 12 photographs cannot be considered in isolation, because the evidence at sentencing showed that the charged photographs were only the tip of the iceberg regarding defendant's sexually deviant behavior. The State highlights that a search of defendant's computer revealed over 2500 pictures of young children in various stages of undress and/or in sexual or provocative poses; there were pictures and emails of defendant's penis touching children's feet;

there were pictures of girls' genitalia that he described taking when they were asleep; defendant had prior convictions for battery, public indecency, lewd lascivious behavior/exposing genitals, and unlawful possession of a firearm; defendant had exposed his penis on multiple occasions to girls and women in public, sometimes masturbating and ejaculating in front of them; and defendant interacted with children on websites, exposing himself and asking that they expose themselves to him. The State maintains that defendant's sentence, considered in light of all of this evidence, does not violate the proportionate penalties clause because the sentence does not shock the moral sense of the community.

¶ 52    Regarding mitigating evidence, the State argues that the trial court is presumed to have considered such evidence, and that the trial court never stated that there was no other mitigation aside from the fact that defendant did not physically hurt another person. The State maintains that given defendant's long history of sexually deviant behavior, spanning three decades of his adult life, there is little if any evidence in mitigation supporting his prospects for rehabilitation. The State argues that defendant's assertion that his actions were likely rooted in the mental illnesses of pedophilia and exhibitionism is speculative and meritless, especially considering that the record shows that defendant underwent a court-ordered psychosexual evaluation but chose not to share the results. The State argues that, even otherwise, the existence of mitigating factors does not obligate the trial court to impose a lower sentence. See *People v. Garibay*, 366 Ill. App. 3d 1103, 1109 (2006). The State further cites *People v. Heider*, 231 Ill. 2d 1, 21 (2008), where the supreme court stated that future dangerousness resulting from a mental deficiency can be considered in aggravation.

¶ 53    As stated, defendant asserts both plain error and ineffective assistance of counsel in relation to this sentencing issue. For a claim of ineffective assistance of counsel, a defendant must

satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). The defendant must first establish that, despite the strong presumption that trial counsel acted competently and that the challenged action was the product of sound trial strategy, counsel's representation fell below an objective standard of reasonableness under prevailing professional norms such that he or she was not functioning as the counsel guaranteed by the sixth amendment. *People v. Manning*, 227 Ill. 2d 403, 416 (2008). Second, the defendant must establish prejudice. *People v. Valdez*, 2016 IL 119860, ¶ 14. In most situations this is done by showing a reasonable probability that the outcome of the proceeding would have been different absent counsel's errors. *Id.* A failure to establish either prong of the *Strickland* test precludes a finding of ineffectiveness. *People v. Peterson*, 2017 IL 120331, ¶ 79. Defendant's plain error and ineffective assistance of counsel arguments both require us to examine the merits of defendant's argument, so we proceed in that vein.

¶ 54    A trial court has wide latitude in sentencing a defendant as long as it does not ignore relevant mitigating factors or consider improper aggravating factors. *People v. McGee*, 2020 IL App (2d) 180998, ¶ 8. The weight to be given to these factors depends on the circumstances of each case. *People v. Ferguson*, 2020 IL App (3d) 200041, ¶ 12. A reviewing court gives substantial deference to the trial court's sentencing decision because the trial court has observed the defendant and the proceedings and is therefore in a much better position to consider the sentencing factors. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 9. We therefore accord great deference to a sentence within the appropriate sentencing range. *People v. Colon*, 2018 IL App (1st) 160120, ¶ 66. We will not disturb the trial court's sentencing decision absent an abuse of discretion, which occurs only where the sentence is greatly at variance with the law's spirit and purpose, or manifestly disproportionate to the nature of the offense. *Brown*, 2018 IL App (1st) 160924, ¶ 9. We may not

substitute our judgment for that of the trial court just because we would have weighed sentencing factors differently. *Colon*, 2018 IL App (1st) 160120, ¶ 66.

¶ 55    Defendant also challenges his sentence under Illinois' proportionate penalties clause. See Ill. Const. 1970, art. I § 11. A sentence violates the proportionate penalties clause if the offense's punishment is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. *People v. Howard*, 2021 IL App (2d) 190695, ¶ 26.

¶ 56    We note that although the trial court sentenced defendant to 72 years' imprisonment, we have already determined that defendant is subject to a maximum of 60 years' imprisonment.

¶ 57    We agree with the State that there is no indication that the trial court did not consider all mitigating factors. The trial court is presumed to have considered all relevant factors and mitigating evidence, and it is not obligated to recite and assign a value to each factor. *People v. Williams*, 2019 IL App (1st) 173131, ¶ 21. After stating that defendant's conduct did not cause physical harm, the trial court stated, "For the most part, that's about it in mitigation. I didn't see a whole lot else out there that really mitigates the situation." We agree with the State that the trial court's comments meant that it did not think that there were any other substantial mitigating factors, as opposed to meaning that there were no other mitigating factors at all.

¶ 58    As for defendant's claim of mental illness, any error from failing to consider this factor would constitute invited error because defendant chose not to share the results of his psychosexual evaluation, which could have provided some evidence of a mental condition. "Under the invited-error doctrine, a defendant cannot complain of error that he or she induced the trial court to make, or to which he or she consented." *People v. Montes*, 2020 IL App (2d) 180565, ¶ 45. Further, a court is not required to assign more weight to a defendant's rehabilitative potential than to aggravating factors. *People v. Smith*, 2021 IL App (5th) 190066, ¶ 75.

¶ 59   Regarding the vast amount of child pornography on the Internet, the purpose of Illinois' child pornography statute "is to prevent the sexual abuse and exploitation of children by 'drying up' the market for child pornography" (*People v. Geever*, 122 Ill. 2d 313, 326 (1988)), which is an important goal regardless of how many images exist in the world. We also agree with the State that defendant frames his argument based solely on the 12 photographs at issue, without acknowledging the large amount of evidence presented in aggravation at his sentencing hearing, which also distinguishes this case from *Stacey*. Defendant had over 2500 pornographic-type pictures of children, and there was evidence that he had taken advantage of his daughters' minor friends sleeping over by touching their feet with his penis, touching their bodies, and taking pictures of their private parts. Defendant had also flashed, masturbated, and ejaculated in public, including in front of children, and flashed children in video calls online and asked that they flash him back. Defendant further had prior convictions, largely related to deviant sexual behavior.

¶ 60   A sentence of 60 years' imprisonment is the equivalent of 5 years' imprisonment for each of the 12 counts, which is just one year over the statutory minimum per count. Considering the facts surrounding defendant's convictions and the evidence in aggravation and mitigation, we cannot say that a sentence of 60 years is an abuse of discretion or cruel, degrading, or so wholly disproportionate to the offenses as to shock the moral sense of the community. As we have found no error in a sentence of 60 years' imprisonment, there can be no plain error or finding of ineffective assistance of counsel. See *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 59.

¶ 61                                        III. CONCLUSION

¶ 62   For the reasons stated, we modify defendant's sentence to an aggregate sentence of 60 years' imprisonment.

¶ 63   Affirmed as modified.