NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240739-U

NO. 4-24-0739

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Boone County |
| JOSEPH G. THOMPSON, | ) | No. 17CF216 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | C. Robert Tobin III, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the summary dismissal of defendant's postconviction petition where defendant did not allege an arguable claim that he received ineffective assistance of trial counsel for failing to investigate and present expert testimony.

¶ 2    Defendant, Joseph G. Thompson, appeals an order summarily dismissing his postconviction petition. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In August 2017, a grand jury indicted defendant on 12 counts of unlawful dissemination of child pornography (720 ILCS 5/11-20.1(a)(2) (West 2016)). Defendant disclosed to the prosecution that he intended to rely on the affirmative defense that he made a *bona fide* inquiry to ascertain that the individuals in the photographs were 18 years or older and his reliance upon the information obtained was reasonable. See 720 ILCS 5/11-20.1(b)(1) (West 2016)

(establishing this as an affirmative defense to a charge of child pornography).

¶ 5        The case proceeded to a jury trial in September 2019. In an order resolving defendant's direct appeal, the appellate court recounted the evidence in detail, and we need not repeat everything here. See *People v. Thompson*, 2022 IL App (2d) 190950-U, ¶¶ 6-16. It will suffice to say the following.

¶ 6        The evidence showed that on February 15, 2017, defendant e-mailed photographs depicting apparent child pornography involving unknown individuals to a person he met through Craigslist. America Online notified the National Center for Missing and Exploited Children about these e-mails, and the Belvidere Police Department investigated the matter. When police officers executed a search warrant of defendant's home on July 20, 2017, defendant asked, without being prompted, whether the search pertained to child pornography. Upon searching defendant's computer, investigators found the files that defendant disseminated on February 15, 2017. Investigators also discovered that defendant conducted Internet searches between May and July 2017, using numerous terms designed to retrieve sexualized pictures of children. Investigators further uncovered evidence that defendant had a history of bragging on the Internet about sexually exploiting children, which he sometimes documented with photographs.

¶ 7        The jury viewed the photographs forming the basis of defendant's charges. The photographs depicted what seem to be seven different females in sexually suggestive poses and various stages of undress. Dr. Raymond Davis, a pediatrician and child abuse specialist, testified for the State that he evaluated the ages of the individuals depicted in these photographs using the "Tanner Scale," which categorizes sexual maturity. Dr. Davis opined that each person depicted in the photographs was under the age of 18, and some of them were likely under 13 years old. On cross-examination, Dr. Davis conceded that he could not ascertain an individual's age with

absolute certainty without seeing a birth certificate. He further acknowledged that it was possible for a "very late developer" who was an "extreme outlier" to be over the age of 18 and not have reached developmental milestones characteristic of younger people. Nevertheless, Dr. Davis explained that he would not testify in a child pornography case unless he felt comfortable opining that a person was a minor. On redirect examination, Dr. Davis testified that he felt comfortable saying there was "probably less than a 1 percent chance" that the individuals at issue were over 18 years old.

¶ 8        Defendant did not present any evidence. The trial court refused defendant's proposed jury instruction about his affirmative defense, as there was no evidence that defendant made a *bona fide* inquiry to ascertain the ages of the individuals depicted. In his closing argument, one of the points defense counsel made was that Dr. Davis conceded it was possible for an adult not to have progressed through typical developmental phases.

¶ 9        The jury found defendant guilty of all charges. The trial court sentenced defendant to 72 years in prison. On direct appeal, the appellate court affirmed the judgment but reduced defendant's sentence to 60 years based on a statutory sentencing cap. *Thompson*, 2022 IL App (2d) 190950-U, ¶¶ 43, 62.

¶ 10        On October 16, 2023, defendant filed a *pro se* postconviction petition alleging multiple claims. Relevant to this appeal, defendant alleged that his trial counsel was ineffective for failing to "investigate witnesses, as well as[ ] call credible and relevant expert witnesses that supported the defendant's theory of innocence." Defendant did not identify any witnesses who should have been investigated or called, nor did he explain the topics or content of their proposed testimony. Rather, defendant asserted generally that he was "convicted on the basis of opinions," and he maintained that defense counsel was obligated to "counter those opinions with facts." Later

in his petition, defendant again asserted that "[i]t was incumbent on counsel to present testimony to counter the prosecution's experts." Defendant did not submit any evidentiary documentation with his petition.

¶ 11        On November 6, 2023, the trial court entered an order summarily dismissing defendant's postconviction petition. The court reasoned that the subject claim was conclusory and based on speculation because defendant did not identify any witness or proffer what the proposed testimony would have been. We granted defendant's motion to file a late notice of appeal from this order.

¶ 12                                II. ANALYSIS

¶ 13        The parties disagree about whether the trial court properly summarily dismissed defendant's postconviction petition alleging ineffective assistance of counsel.

¶ 14        The Post-Conviction Hearing Act (Act) allows a person imprisoned in the penitentiary to assert that his or her conviction was the result of a substantial denial of his or her constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2022). At the first stage of a postconviction proceeding, the trial court independently reviews the petition, taking the allegations as true (*People v. Tate*, 2012 IL 112214, ¶ 9), to determine whether the petition is "frivolous or *** patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2022)). A court may summarily dismiss a petition as frivolous or patently without merit only if it has "no arguable basis either in law or in fact." *Tate*, 2012 IL 112214, ¶ 9. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009).

¶ 15        At the first stage, the defendant must set forth only the gist of a constitutional claim, which means that the petition alleges "enough facts to make out a claim that is arguably

constitutional." *Hodges*, 234 Ill. 2d at 9. Although the threshold for surviving the first stage is low, that "does not mean that a *pro se* petitioner is excused from providing any factual detail at all surrounding the alleged constitutional violation." *Hodges*, 234 Ill. 2d at 10. To that end, the petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2022). Additionally, "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2022). We review *de novo* an order summarily dismissing a postconviction petition. *Hodges*, 234 Ill. 2d at 9.

¶ 16 Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting the *Strickland* standard). Generally, to sustain a claim of ineffective assistance, a defendant must show that his or her counsel's performance was deficient and that such deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient where he or she made errors that were so serious that he or she "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant establishes prejudice where "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. 687. In that respect, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 17 Where a defendant alleges ineffective assistance of counsel in a postconviction petition, the defendant need not show at the first stage of the proceedings that the *Strickland*

standard is satisfied. Rather, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17.

¶ 18 Here, defendant alleged that his trial counsel was ineffective under *Strickland* for failing to "investigate witnesses, as well as[ ] call credible and relevant expert witnesses that supported the defendant's theory of innocence." Defendant's appellate counsel construes defendant's claim as being that trial counsel failed to both investigate and present expert testimony relevant to the ages of the individuals depicted in the photographs at issue in the indictment.

¶ 19 We hold that defendant failed to allege the minimum amount of factual detail necessary to present an arguable claim of ineffective assistance of counsel. Defendant did not mention what his "theory of innocence" was, explain how an expert could have supported that theory in even the broadest of terms, or identify the general topic of the proposed expert testimony. Defendant's claim was conclusory, bereft of *any* factual detail. On appeal, defendant seems to argue that he was justified in omitting factual allegations because he lacked knowledge of the testimony an expert could provide. However, the Act requires that a petition "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2022). Our supreme court has interpreted this to mean that *pro se* petitioners must "present a limited amount of detail in the petition." *Hodges*, 234 Ill. 2d at 9. Notably, the supreme court did not say "no detail." Here, defendant fell short of the low bar at the first stage of proceedings. He did not attempt to articulate in the petition how expert testimony might have related to or helped his case, so his conclusory ineffective assistance claim based on counsel's failure to investigate or present expert testimony is frivolous and patently without merit.

¶ 20 On appeal, defendant proposes that expert testimony could have supported his

defense that the individuals depicted in the subject photographs could have been or were over the age of 18. In other words, they may have been "women hired because of their underdeveloped looks." Even employing the most liberal reading of defendant's *pro se* pleading, this theory simply is not articulated in the petition. Moreover, it is not apparent how an expert could have supported defendant's theory beyond what already came out at trial. Defendant acknowledges in his brief that "there is no way to tell with certainty whether these photographs are of actual children," which is a point that Dr. Davis conceded on cross-examination. Defendant further contends on appeal that a defense expert could have pointed out the "flaws of Dr. Davis's testimony." However, defendant does not provide any insight as to what those flaws might have been.

¶ 21 In contemplating the possibility that the individuals in the photographs could have been over 18 years old, we also cannot ignore the facts of the case. The photographs forming the basis of the child pornography charges certainly appear to depict pubescent or prepubescent girls. See *People v. Schubert*, 136 Ill. App. 3d 348, 354 (1985) (explaining that "the best evidence of whether material constitutes child pornography is the material itself," as a jury may rely on its observations and common experiences to "assess the age of the children depicted"). Additionally, the trial evidence showed that defendant (1) repeatedly used Internet search terms between May and July 2017 that were reflective of a prurient interest in children, (2) bragged online about taking pictures of himself sexually exploiting children, and (3) predicted that police officers were looking for child pornography when they executed their search warrant. Defendant's theory on appeal—that the photographs he disseminated on February 15, 2017, appearing to depict underage girls may have depicted adults—is undermined by the evidence that he repeatedly sought out images of children, professed his sexual desire for children, and apparently believed that he possessed child pornography. Defendant does not explain how his theory is anything other than fanciful under the

specific circumstances of this case.

¶ 22    Defendant further argues on appeal that it would be unreasonable to expect a *pro se* prisoner to obtain an affidavit from an expert at the first stage of postconviction proceedings. Therefore, he asks us to excuse his noncompliance with the Act's documentation requirement. See 725 ILCS 5/122-2 (West 2022) (requiring a petition to include either (1) "affidavits, records, or other evidence supporting its allegations" or (2) a statement explaining the absence of such documentation). The parties' debate about the applicability of the requirement to corroborate allegations is purely academic because defendant's petition failed to allege *any* facts.

¶ 23    Additionally, the cases defendant cites in support of his request to overlook the Act's documentation requirement are distinguishable. In *People v. Herring*, 2022 IL App (1st) 210355, ¶¶ 2, 19, 28-29, the defendant referenced specific facts and scientific studies in his petition, which outlined the gist of a claim that he was functionally a juvenile at the time of the offense and should be sentenced accordingly. Here, unlike in *Herring*, defendant did not allege facts or scientific studies relevant to his claim. In *People v. Reynolds*, 2024 IL App (1st) 221222-U, ¶¶ 23, 33, 41, 43, 45-46, the appellate court allowed a postconviction petition to advance to the second stage where the defendant, who was convicted solely on the basis of relatively weak eyewitness testimony in a case where the jury struggled to reach a verdict, plausibly might have benefitted from an expert at trial to testify about the fallibility of eyewitness testimony. Here, as we have explained, it is not apparent how expert testimony would have benefitted defendant beyond what came out at trial.

¶ 24    Accordingly, we hold that the trial court properly summarily dismissed defendant's postconviction petition, which was frivolous and patently without merit.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.