**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220153-U

Order filed June 5, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0153 Circuit No. 19-CF-698 |
| JUSTIN LEE DALCOLLO, | ) ) ) | Honorable Ann Celine O'Hallaren Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice McDade and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   Defendant was properly sentenced.

¶ 2    Defendant, Justin Lee Dalcollo, appeals from his 101-year sentence. Defendant contends the Du Page County circuit court (1) improperly imposed consecutive sentences exceeding the limitation provided under section 5-8-4(f)(2) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4(f)(2) (West 2018)), and (2) abused its discretion in sentencing defendant to an excessive sentence. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4          On April 9, 2019, the State filed a 14-count indictment. The indictments charged defendant with four counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(3), (4), (8) (West 2018)) relating to the sexual penetration between defendant's penis and M.F.'s vagina; four counts of aggravated criminal sexual assault (*id.*) relating to the sexual penetration between defendant's penis and M.F.'s anus; aggravated kidnapping while armed with a firearm (*id.* § 10-2(a)(6)); armed robbery with a firearm (*id.* § 18-2(a)(2)); unlawful restraint (*id.* § 10-3(a)); aggravated unlawful restraint (*id.* § 10-3.1(a)); and two counts of unlawful possession of a weapon by a felon (UPWF) (*id.* § 24-1.1(a)).

¶ 5          On February 14, 2020, the State informed the court that the mandatory minimum would be 63 years' imprisonment if defendant were found guilty of all charges given the consecutive nature of several charges and applicable firearm enhancements.

¶ 6          On September 30, 2020, defendant entered a partially negotiated plea to one count of aggravated criminal sexual assault and armed robbery with a firearm, and the State agreed to dismiss the remaining charges. Each charge had a sentencing range of 21 to 45 years' imprisonment. The State also agreed to a sentencing cap of 30 years' imprisonment for armed robbery, and defendant would serve the two charges consecutively. The court accepted defendant's guilty plea, ordered a presentence investigation (PSI), and continued the matter for sentencing. Defendant made several allegations of ineffective assistance of counsel and judicial error. On October 26, 2020, defendant filed a motion to withdraw his guilty plea.

¶ 7          On February 18, 2021, defendant indicated that he wished to proceed *pro se*. The court admonished defendant under Illinois Supreme Court Rule 401 (eff. July 1, 1984). The court informed defendant of the applicable sentencing ranges for the original 14 counts so that defendant

could "think long and hard about" wishing to proceed *pro se* and the possibility that he could be found guilty. The court continued, "in addition to each of the individual counts that you're facing in this particular case, depending upon whether or not you are convicted or found guilty on any of these counts, there could be mandatory consecutive penalties that you'd be facing between these particular charges." Following the admonishments and defendant indicating that he understood and wished to proceed, the court granted defendant's request to represent himself. On a subsequent court date after a hearing, the court granted defendant's motion to withdraw his guilty plea. The court explained to defendant that upon granting his motion, defendant "started over," and the court reinstated all 14 counts.

¶ 8 On December 7, 2021, the matter proceeded to a jury trial. Prior to trial, the State dismissed four counts: two counts of aggravated criminal sexual assault, unlawful restraint, and aggravated unlawful restraint. At trial, M.F. testified that on March 22, 2019, she was running errands. After several stops, M.F. returned to her car and entered the driver's seat. When M.F. placed her purse on the front passenger floorboard, defendant appeared in her face, pointing a small pink handgun at her, and screaming at her to get in the car and give him money. M.F. was "terrified" and moved into the passenger seat. Defendant continued to point the gun at M.F. and began touching M.F.'s shoulders and chest. Defendant told M.F. "that he was going to blow [her] brains out" if she did not give him money. M.F. drove to an automated teller machine (ATM), withdrew $300, and gave the money to defendant. Defendant told M.F. that he would let her go if she took him to the train station and that he had killed two police officers and was on the run. After a failed attempt at withdrawing more money from another ATM, defendant told M.F. to drive him to a casino. Defendant pointed the gun at M.F. and instructed her to move to the backseat and pull her pants down. M.F. screamed and told defendant to "stop," and defendant responded, "I just have to."

3

Defendant entered the backseat, pointed the gun at M.F., and pulled M.F.'s pants and underwear down. M.F. felt defendant's penis touch her anus and enter her vagina for several minutes until defendant said, "I'm done." During the encounter, defendant continued pointing the gun at M.F. After, defendant directed M.F. to drive him to a convenience store, where he ordered M.F. to enter while holding her keys, phone, and wallet. In the store, defendant purchased chewing tobacco, which he later spit into a bag in M.F.'s car. When they returned to the car, defendant ordered M.F. to drive to a train station. Upon arriving at the train station, defendant called a cab and M.F. waited with defendant in her car until the cab arrived. After defendant left, M.F. drove home, went to the hospital for a sexual assault examination, and reported the incident to the police. DNA tests located defendant's saliva in a bag from M.F.'s car and defendant's semen from both the car's center console and M.F.'s vagina. M.F. identified defendant in a photographic lineup as the perpetrator. Defendant was found in possession of a black and pink loaded handgun. During a police interview, defendant admitted to the crimes, but stated that the sexual encounter was consensual. The jury found defendant guilty of the remaining 10 counts. Defendant's motion for a new trial was denied.

¶ 9    Defendant's PSI indicated that he was 36 years old at the time of sentencing. Defendant had not held a job since 2017 and was unable to maintain employment due to his mental health. Defendant was diagnosed with bipolar disorder, paranoid schizophrenia, posttraumatic stress disorder and used many illicit substances. During his childhood, defendant reported that his stepfather physically and mentally abused him. Defendant's criminal history included two convictions for domestic battery, theft, unlawful sexual conduct with a minor, and failure to provide notice of change of address, for which defendant remained on parole at the time of the present offense. Additionally, defendant had an outstanding warrant for the theft of a firearm. Defendant indicated that he cut off his ankle monitor and fled Ohio where he was serving his

4

sentence for unlawful sexual conduct. Defendant also stated that he met M.F. on Tinder and planned to meet so she could give him money. Defendant also asserted that the sexual conduct was consensual and denied pointing a gun at M.F.

¶ 10    During the sentencing hearing, the State presented evidence of defendant's prior criminal sexual conduct conviction and several violations defendant received while in the Du Page County jail. A rape crisis advocate presented M.F.'s victim impact statement, explaining the effect that defendant's crimes have had on her. Defendant did not give a statement in allocution.

¶ 11    In sentencing defendant, the court indicated that it considered the statutory factors in aggravation and mitigation, the PSI, the evidence presented at trial and sentencing, the victim impact statement, the circumstances of the offense, and the history, character, and condition of defendant. The court explicitly considered in mitigation defendant's difficult childhood as a victim of abuse, several mental health diagnoses, children, and familial relationships. In aggravation, the court noted the "overwhelming amount" of evidence, including defendant's

> "background, criminal history, *** status as a sex offender on parole at the time of these offenses, the physical and emotional effect he has had on the victim, the defendant's deplorable actions brought out through evidence at trial, and the defendant's reprehensible behavior, which underscores that he is incapable of rehabilitation and likely to reoffend."

The court noted defendant's lengthy criminal history "with back-to-back convictions for domestic battery" for which defendant failed to successfully complete the terms of his sentences, and his conviction for unlawful sexual conduct with a minor in Ohio. Defendant was on parole for that offense when he removed his ankle monitor, fled, and committed the "heinous acts" against M.F. The court characterized defendant's actions as his refusal "to abide by any authority or the law."

5

The court continued that defendant "engaged in a pattern of taking whatever he wants, whenever he wants, if the opportunity suits him," portrayed himself as the victim, and lacked remorse. The court noted defendant's continued "defiant behavior" and "inability to control himself" while in custody.

¶ 12    Noting that the sentence was in the interest of justice and the safety of the public, the court sentenced defendant to two consecutive terms of 40 years' imprisonment for two counts of aggravated criminal sexual assault while using a firearm. Additionally, the court sentenced defendant to 21 years for aggravated kidnapping, 30 years for armed robbery, and 5 and 7 years for the two counts of UPWF. The court also ordered the aggravated kidnapping sentence to run consecutively, reasoning that it was "the next highest class offense." The other sentences ran concurrently, for a total aggregate sentence of 101 years' imprisonment. Additionally, the court found that

> "a significant amount of time which will be the equivalent of a life-long sentence in the Department of Corrections [(DOC)] is necessary for the protection of the public, the need for deterrents [*sic*], and reassurance that the defendant cannot commit incomprehensible criminal acts on any other citizen. This defendant's heinous acts *** have forfeited him from ever reentering society."

The court denied defendant's motion to reduce his sentence, and defendant appealed.

¶ 13                                    II. ANALYSIS

¶ 14        On appeal, defendant argues that the court abused its discretion by imposing an unauthorized aggregate sentence exceeding the limitation provided by section 5-8-4(f)(2) of the Code (730 ILCS 5/5-8-4(f)(2) (West 2018)) and the court imposed an excessive sentence.[1]

¶ 15        The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The circuit court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors ***." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include the nature of the crime, the public's protection, deterrence, punishment, and the defendant's rehabilitative potential. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). We review the circuit court's sentencing determination for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will find an abuse of discretion only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). We will not disturb a sentence within the applicable sentencing range unless the circuit court abused its discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 16        The court shall impose consecutive sentences in convictions involving aggravated criminal sexual assault (730 ILCS 5/5-8-4(d)(2) (West 2018)) and has the discretion to impose consecutive sentences for other offenses to "protect the public from further criminal conduct by the defendant." *Id.* § 5-8-4(c)(1). "[T]he aggregate of consecutive sentences for offenses that were committed as

_____

[1]While the State argues that defendant forfeited these issues, our review of the record indicates that defendant sufficiently preserved these claims for appeal.

7

part of a single course of conduct during which there was no substantial change in the nature of the criminal objective shall not exceed the sum of the maximum terms authorized *** for the 2 most serious felonies involved." *Id.* § 5-8-4(f)(2).

¶ 17    Defendant asserts that, despite his ineligibility, the court abused its discretion by imposing an extended-term sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Defendant reasons that because the State failed to prove any additional facts for an extended-term sentence, his sentence improperly exceeded 90 years' imprisonment, the total of the maximum unextended consecutive sentence for the two most serious felonies. *Id.*; see also 730 ILCS 5/5-8-4(f)(2) (West 2018).

¶ 18    The statutory sentencing range for a Class X felony aggravated criminal sexual assault with a firearm is 21 to 45 years' imprisonment. 720 ILCS 5/11-1.30(a)(8), (d)(1) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018). The sentencing range for a Class X felony aggravated kidnapping with a firearm is 21 to 45 years' imprisonment. 720 ILCS 5/10-2(a)(6), (b) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018). The court imposed 40 years for each of the aggravated criminal sexual assault offenses and the minimum of 21 years for aggravated kidnapping, all sentences being within the individual statutory unextended range. Since each sentence is within the unextended range, *Apprendi* is not implicated in defendant's aggregate consecutive sentence. See *People v. Wagener*, 196 Ill. 2d 269, 286 (2001) ("*Apprendi* concerns are not implicated by consecutive sentencing").

¶ 19    Moreover, even though defendant did not receive an extended-term sentence, the extended-term sentencing range for a Class X felony is relevant to analyze defendant's sentence "as a measuring statute" to compute the maximum aggregate consecutive sentence permitted under section 5-8-4 of the Code. *People v. Woods*, 131 Ill. App. 3d 51, 55 (1985); see also *People v.*

8

*Beck*, 190 Ill. App. 3d 748, 763-64 (1989). The statutory extended-term sentencing range for a Class X felony aggravated criminal sexual assault with a firearm is 45 to 75 years' imprisonment. 720 ILCS 5/11-1.30(a)(8), (d)(1) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018). Defendant's total sentence could not exceed the sum of the maximum extended terms authorized for defendant's two aggravated criminal sexual assault convictions or a total aggregate sentence of 150 years' imprisonment. *People v. Myrieckes*, 315 Ill. App. 3d 478, 482 (2000) (the "maximum terms authorized" by section 5-8-4 includes the maximum extended-term and not the maximum term for which a particular defendant is eligible); *Woods*, 131 Ill. App. 3d at 55; *Beck*, 190 Ill. App. 3d at 763-64. Therefore, defendant's 101-year aggregate sentence, comprised of two 40-year mandatory consecutive terms and a 21-year permissive consecutive term, complied with the 150-year limitation under section 5-8-4(f)(2) of the Code. See 730 ILCS 5/5-8-4 (c)(1), (d)(2), (f)(2) (West 2018).

¶ 20    In coming to this conclusion, we reject defendant's attempt to distinguish *Myrieckes*, *Woods*, and *Beck* from the case at bar. Defendant contends that, following *Apprendi*, Illinois amended section 111-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3 (West 2018)) and section 5-8-2(a) of the Code (730 ILCS 5/5-8-2(a) (West 2018)), requiring the State to prove any fact used to impose an extended-term sentence. Defendant reasons that the plain language reading of the amended statute requires that we newly define "maximum terms authorized" in section 5-8-4(f)(2) as the maximum unextended term unless otherwise proved by the State. We disagree with defendant's reading of the statute. Courts have consistently rejected this argument and found that the "maximum terms authorized" by section 5-8-4 includes the maximum extended term, not the maximum term for which a particular defendant is eligible. See

*Myrieckes*, 315 Ill. App. 3d at 482; *Woods*, 131 Ill. App. 3d at 55; *Beck*, 190 Ill. App. 3d at 763-64; *People v. Thompson*, 2022 IL App (2d) 190950-U, ¶ 35.

¶ 21        We now turn to defendant's argument that the court imposed an excessive sentence. Specifically, defendant contends that his sentence is "excessive and disproportionate, *** constitute[es] a 'trial tax,' " and "fails to take into account any potential for rehabilitation." Additionally, defendant asserts that the court failed to consider factors in mitigation, including his abuse as a child, drug and alcohol misuse, suicide attempt, homelessness, and mental illness. As previously stated, each of defendant's three sentences were within the statutory range. *Supra* ¶ 18. Therefore, the sentence is presumptively valid, and defendant bears the burden of rebutting this presumption. *People v. Busse*, 2016 IL App (1st) 142941, ¶¶ 22, 27.

¶ 22        During defendant's sentencing hearing for 10 convictions the court considered and weighed the evidence presented and concluded that defendant's mitigating evidence, including his difficult childhood as a victim of abuse, mental illness, children, and familial relationships, did not significantly depreciate the seriousness of the offense or warrant the imposition of a lesser sentence. The court considered the proper factors when it relied on the PSI, highlighted the seriousness of the present offense, and found defendant would be a danger to society. See *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The court explicitly found that "a significant amount of time which will be the equivalent of a life-long sentence in the [DOC] is necessary for the protection of the public, the need for deterrents [*sic*], and reassurance that the defendant cannot commit incomprehensible criminal acts on any other citizen[,]" forfeiting defendant "from ever reentering society." Prior to finding that defendant was incapable of rehabilitation, the court noted defendant's violent criminal history, refusal "to abide by any authority or the law," "pattern of

10

taking whatever he wants, whenever he wants," and defendant's continued "defiant behavior" and "inability to control himself" while in custody for the present offense.

¶ 23    Additionally, defendant has pointed to nothing in the record affirmatively indicating that the court imposed a "trial tax" at sentencing or otherwise improperly relied on factors in aggravation or disregarded factors in mitigation. See *Hernandez*, 204 Ill. App. 3d at 740. While defendant initially pled guilty to two counts, and faced a maximum sentence of 75 years' imprisonment, he opted to withdraw his guilty plea and proceed to trial on 10 of the original charges, for which the jury convicted him on all charges. The natural result of proceeding to trial on 10 charges versus pleading guilty to 2 charges is that defendant faced a longer sentence if convicted. That, alone, is not evidence that the court imposed a "trial tax." In light of the nature of defendant's 10 convictions, and the court's finding that his actions were "deplorable," and "reprehensible," and defendant was "incapable of rehabilitation," his sentence was not "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999). Therefore, defendant has not met his burden, and the court did not abuse its discretion when sentencing defendant.

### III. CONCLUSION

¶ 24    The judgment of the circuit court of Du Page County is affirmed.

¶ 25    Affirmed.

11